**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| RODNEY ANTONIO BATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00410-TWP-MKK |
| | ) | |
| CAPITAL ONE,<br>EQUIFAX INFORMATION SERVICES LLC, | )<br>) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, RULING ON PENDING MOTIONS, AND DIRECTING FINAL JUDGMENT**

This matter is before the Court on Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, filed by Defendant Capital One (Dkt. 95) and Defendant Equifax Information Services LLC ("Equifax") (Dkt. 98) (collectively, "Defendants"). In his Amended Complaint, *pro se* Plaintiff Rodney Antonio Batts ("Batts") alleges violations of the Fair Credit Reporting Act 15 U.S.C. § 1681 ("FCRA") against the Defendants (Dkt. 26-1). Also before the Court are several motions filed by Batts including: an Objection to the Magistrate Judge's Order Granting Capital One's Extension of Time (Dkt. 94); a Consolidated Response to Defendants' Motions for Summary Judgment, in which Batts also included a Rule 56(d) request, Rule 37 Motion to Compel, Objections to Defendants' Evidence, and a Motion to Strike (Dkt. 105); a Consolidated Response in Opposition to Defendants' Motions for Summary Judgment, Response to Defendants' Replies, Rule 56(d) and Rule 37 Motion, Motion to Strike, and Supporting Affidavit (Dkt. 109); a Motion for Leave to Amend His Response in Opposition to Defendants' Motion for Summary Judgement (Dkt. 110); a Motion for Adverse Inference Sanctions, to Deny or Defer Summary Judgement, and For Other Relief (Dkt. 111); a Motion for Jury Trial (Dkt. 114); a Motion

for Leave to File Supplemental Authority (Dkt. 115); and a Motion for Leave to Supplement His Opposition to Defendants' Motion for Summary Judgment (Dkt. 116).

For the reasons explained below, Capital One's Motion for Summary Judgment is **granted**; Equifax's Motion for Summary Judgment is **granted**; Batts' Objection is **overruled**; the additional filings at Dkt. 109, Dkt. 110, Dkt. 111, Dkt. 115, and Dkt. 116 are **stricken** from the record; and Batts' Motion for Jury Trial is **denied as moot**.

## I. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc*., 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." Dorsey v. Morgan Stanley, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation, but only with appropriate

citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.,* 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## II. BACKGROUND

Because Defendants have moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).

### A. The Account

Capital One is a major American bank and one of the largest credit card issuers and financial service providers in the United States. On August 14, 2017, Batts opened a business credit card account with Capital One with the account number ending in 1307 (the "Account") (Dkt. 96-1 at 3, 6).[1] Batts made late payments at least thirty days past the due date for five monthly statements on the Account related to monthly statements in 2017 and 2018 (Dkt. 100-3 at 43:5–14). None of these late payments are at issue in this case. *Id.*at 43:5–14. Rather, Batts' claims arise

[1] Originally, the account number ended in 3492 but subsequently changed to 1307 (Dkt. 100-3 at 38:20–22; 47:17–23).

exclusively from an alleged false report of a late payment for November 2022 and a reduction in his credit score. *Id.* at 11:1–8.

## B. Equifax Policies and Procedures

Equifax is a credit reporting agency as defined by the FCRA (Dkt. 100-1 at 3). Equifax gathers information regarding consumers, which it uses to create credit reports on more than 200 million consumers in the United States. *Id.* These credit files are used to prepare consumer reports, which Equifax customers or "subscribers" can request when they are evaluating the decision to extend credit to a consumer. *Id.*

Equifax has procedures in place to ensure that the information is accurate and to reinvestigate any information that a consumer claims is inaccurate. *Id.* at 3–6. Equifax only accepts information from reliable sources that it trusts based on the source's reputation and Equifax's prior dealings with those sources. *Id.* at 3. One of those sources is Capital One. *Id.* Additionally, Equifax uses computerized quality checks of the information prior to adding information that it receives into its database. *Id.* at 4.

If a consumer disputes certain information reported in Equifax's credit file, that consumer can contact Equifax. *Id.* Once Equifax receives a dispute from a consumer, it initiates a reinvestigation process. *Id.* This process entails a review of all the relevant information in the materials that the consumer provides and in the consumer's credit file. *Id.* Equifax's response to this information depends on its ability to make the appropriate updates. *Id.* at 4–5. If Equifax can take the necessary steps unilaterally, it will. *Id.* at 4. If there is a need for further reinvestigation, Equifax will reach out to the source of the information ("Data Furnisher"). *Id*. at 5. Equifax sends the relevant information to the Data Furnisher, including the consumer's dispute letter, supporting materials, and the information in the credit file. *Id.*

Typically, this process is done electronically by submitting an Automated Credit Dispute Verification ("ACDV") form through a program called e-OSCAR. *Id.* Once the Data Furnisher receives the information through e-OSCAR, the system requires the Data Furnisher to review the information before returning a response, ensuring a consistent process that cuts down on misunderstandings. *Id.*at 6. The Data Furnisher is typically required both by law and by contract with Equifax to conduct an independent investigation of the information provided and to provide a response with the results of the investigation to Equifax. *Id.* If the Data Furnisher recommends deleting, updating, or modifying information, Equifax reviews the response and takes appropriate measures to ensure that the file is accurate. *Id.* At the end of the reinvestigation, Equifax sends a response to the consumer outlining the results along with summaries of the consumer's rights, additional steps the consumer may take if unsatisfied, and a description of the procedures taken during the reinvestigation, if the consumer requests that information. *Id.*

**C. <u>Batts' Loan Application</u>**

In October 2022, Batts applied for a home equity line of credit ("HELOC") from First Merchants Bank (Dkt. 26-1 at 7; Dkt 96-2 at 26:12–27:25). As part of the application process, there was a forty-five-day waiting period prior to closing (Dkt. 26-1 at 7).

Batts has designated three Equifax Credit Reports, which are dated October 4, 2022 ("October Report"), December 20, 2022 ("December Report"), and February 6, 2023 ("February Report") (together "Credit Reports") (Dkt. 100-2 at 3). His credit scores in the Credit Reports are 664, 616, and 602, respectively. *Id.* at 7, 12, 15. None of the Credit Reports contain a late payment for November 2022. *Id.* at 5–15. When Batts reviewed the Credit Reports at his deposition, he did not see any inaccuracies in the Credit Reports regarding any late payments (Dkt. 100-3 at 84:18–86:5, 88:1–11, 91:6–14).

At some point during the forty-five-day waiting period for the HELOC, a representative from First Merchants Bank reached out to Batts, asked him to come in to see her, and then informed him that his credit score had dropped by sixty points because of a late payment on the Account, showing him her screen displaying the alleged late payment (Dkt. 96-2 at 26:12–27:25, 30:3–31:5). Batts contends that the information that previously showed a late payment for November 2022 was corrected at some point before December 2022 to show that the payment was on time. *Id.* at 31:13–15.

Equifax keeps records of all credit reports that are pulled by third parties, including the date the report is produced and identity of the person pulling the information (Dkt. 100-1 at 16). Based on Equifax's records, the only credit inquiries that First Merchants Bank conducted on Batts occurred at the same time as the Credit Reports. *Id.* at 17. Equifax does not have any records of publishing a credit report concerning the Account in November 2022. *Id.* Batts has not produced the alleged credit report from November 2022 (Dkt. 100-3 at 93:1–10).

First Merchants Bank notified Batts of its denial of his HELOC application in a letter dated December 29, 2022 ("First Denial Letter") (Dkt. 96-5). The First Denial Letter states that his HELOC application is denied, in whole or in part based on his credit report, and it states that Batts' credit score was 616. *Id.* at 2. First Merchants Bank sent another letter, dated February 7, 2023 ("Second Denial Letter"), notifying Batts of its denial of his HELOC application (Dkt. 96-7). The Second Denial Letter stated its decision was based in whole or in part on Batts' credit report and that Batts' credit score was 602. *Id.* at 2.

**D. <u>Batts' Disputes</u>**

Batts contacted Equifax by telephone on December 30, 2022, and disputed any late payment from November 2022 on the Account (Dkt. 100-1 at 10). In response, Equifax conducted

a reinvestigation. *Id.* The reinvestigation shows no late payment in Batts' credit file at the time of dispute. *Id.*; (Dkt. 96-4 at 4). Equifax maintains frozen scans of Batts' credit file, which are records that provide a snapshot of Batts' credit file which contains his payment history for all tradelines and accounts as they were then reported in his credit file (Dkt. 100-1 at 7). The frozen scans show that Batts' credit file never contained a late payment for November 2022. *Id.* at 16. Instead, Equifax's data reports a "[0]" for November 2022, indicating that the payment for that month was current. *Id.*

On December 30, 2022, Capital One received an ACDV from Equifax (Dkt. 96-1 at 5–8). Equifax also sent the payment history that appeared in Batts' credit file at the time of the dispute (Dkt. 100-1 at 10). Capital One responded to the ACDV and verified the accuracy of the reported information, which did not include a late payment for November 2022. *Id.* at 10–11. After completing its reinvestigation, Equifax reported the results to Batts in a report dated January 2, 2023. *Id.* at 11. The results did not show a late payment for November 2022. *Id.* Batts testified in his deposition that he did not see any inaccurate late payments in the reinvestigation results (Dkt. 100-3 at 60:14–63:3).

Following this reinvestigation, Batts submitted a complaint to the Consumer Financial Protection Bureau disputing his decreased credit score (Dkt. 96-1 at 14–17; Dkt. 100-1 at 11). In this complaint, he claimed that there was a late payment for November 2022 and that his credit score dropped fifty points (Dkt. 96-1 at 15). He additionally claimed that the misreported late payment had been corrected. *Id.*

The Consumer Financial Protection Bureau sent Batts' complaint to Equifax, which conducted another reinvestigation in accordance with its policies (Dkt. 100-1 at 12). This reinvestigation yielded the same outcome as the previous one: Capital One responded to the ACDV

that Equifax submitted verifying that the information submitted (which did not have a late payment for November 2022) was correct, and no late payment for November 2022 appeared in the reinvestigation results. *Id.* Equifax sent the results to Batts. *Id.*

Batts sent another dispute to Equifax in a letter dated March 1, 2023. *Id.* at 13, 149–162. Equifax conducted another reinvestigation and sent an ACDV to Capital One, which yielded the same outcome as the first two. *Id.* at 13–14. Equifax sent the results to Batts. *Id.* at 14. Batts confirmed at his deposition that he did not see any inaccurate late payments in the reinvestigation report when shown the document (Dkt. 100-3 at 71:15–72:12).

On December 30, 2024, Equifax received a demand letter from Batts dated December 16, 2024, asking Equifax to update his account history to boost his credit score and to pay him $150,000.00 (Dkt. 100-1 at 14, 180–83). Equifax conducted another reinvestigation and sent an ACDV to Capital One, which yielded the same outcome as the first three. *Id.* at 14–15. Equifax sent the results to Batts. *Id.* at 15.

**E. Procedural History**

Batts initiated this action on March 3, 2025 (Dkt. 1). On May 15, 2025, he filed an operative Amended Complaint (Dkt. 26-1). The Amended Complaint alleges four violations of the FCRA: failure to assure credit reporting accuracy in violation of § 1681e(B); failure to reasonably investigate in violation of §§ 1681s-2(b) and 1681i(a)(1); failure to review and consider all relevant information submitted in violation of § 1681i(a)(4); and failure to restore disputed and unverifiable information in violation of § 1681i(a)(5)(A). *Id.* Additionally, Batts alleges the Defendants willfully violated the FCRA. *Id.*

The deadline for serving discovery responses was December 12, 2025 (Dkt. 72 at 1). After the close of discovery, Batts filed several motions related to discovery, including the following: a

Supplemental Motion to Overrule Equifax's Discovery Objections (Dkt. 75); a Supplemental Motion to Overrule Capital One's Discovery Objections (Dkt. 76); a Motion to Issue Subpoena (Dkt. 77); a Motion to Compel Discovery And for Discovery Reset (Dkt. 92); and a Rule 56(d) Motion to Defer, Deny, or Continue Summary Judgment Pending Completion of Discovery (Dkt. 93). Except for granting Batts' Supplemental Motion to Overrule Equifax's Discovery Objections to the extent of directing counsel for Equifax to send a letter to Batts with previously produced credit reports and additional information, the Magistrate Judge denied all of these motions, noting that discovery was closed (Dkt. 103).

On February 9, 2026, Capital One and Equifax submitted their respective Motions for Summary Judgment (Dkt. 95; Dkt. 98). Batts responded to these Motions in a Consolidated Response, in which he also included a Rule 56(d) request, Rule 37 Motion to Compel, Objections to Defendants' Evidence, and Motion to Strike (Dkt. 105). Following the Defendants' respective Replies (Dkt. 106; Dkt. 107), Batts filed the following additional motions: a Consolidated Response in Opposition to Defendants' Motions for Summary Judgment, Response to Defendants' Replies, Rule 56(d) & Rule 37 Motion, Motion to Strike, and Supporting Affidavit (Dkt. 109); a Motion for Leave to Amend His Response in Opposition to Defendants' Motion for Summary Judgement (Dkt. 110); a Motion for Adverse Inference Sanctions, to Deny or Defer Summary Judgement, and For Other Relief (Dkt. 111); a Motion for Leave to File Supplemental Authority (Dkt. 115); and a Motion for Leave to Supplement his Opposition to Defendants' Motion for Summary Judgment (Dkt. 116).

## III. DISCUSSION

Batts alleges that Capital One and Equifax each reported an inaccurate thirty-day late payment to First Merchants Bank concerning his Capital One credit card ending in 1307 for November 2022, and that the purported late payment caused a sixty-point drop in his **Fair Isaac Corporation** ("FICO") credit score and a mortgage denial. He is seeking damages under the FRCA. Both Capital One and Equifax are seeking judgment as a matter of law, arguing that the undisputed evidence refutes Batts' assertions. Before turning to the Defendants' Motions for Summary Judgment, the Court will first address Batts' ancillary motions.

### A. Batts' Duplicative and unauthorized filings

This Court's Local Rules govern motions practice, including responses and replies, and this Court has previously warned Batts that duplicative and unauthorized filings would be stricken. (Dkt. 74 at 5-6). The filings at Dkt. 109, Dkt. 110, Dkt. 111, Dkt. 115, and Dkt. 116 are either duplicative filings or unauthorized surreplies. All of these filings came well after the seven-day deadline for filing a surreply. *See* S.D. Ind. Local R. 56-1(d). Batts previously acknowledged his failures and promised the Court that he would strictly comply with the Court's Local Rules (Dkt. 85), but he has failed to do so. Accordingly, the filings at Dkt. 109, Dkt. 110, Dkt. 111, Dkt. 115, and Dkt. 116 are **stricken**. When ruling on the summary judgment motions, the Court will only consider the permitted response at Dkt. 105.

### B. Batts' Objection to Extension of Time

Batts objects to the Magistrate's Judge's Order granting an extension of time to Capital One to file its response to his Amended Complaint pursuant to Federal Rule of Civil Procedure 72(a)

(Dkt. 94). Under Rule 72(a), a district court may refer for decision a non-dispositive pretrial motion to a magistrate judge. Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

After reviewing objections to a magistrate judge's order, the Court will modify or set aside the order only if it is clearly erroneous or contrary to law. The clear error standard is highly differential, permitting reversal of the magistrate judge's ruling only when "the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong," and the Court will not modify a magistrate judge's non-dispositive, pretrial decision "simply because [it has] doubts about its wisdom or think[s] [it] would have reached a different result." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Coley v. Landrum*, No. 14-cv-00956, 2016 WL 427518, at *1 (S.D. Ind. Feb. 4, 2016) (citation and quotation marks omitted).

On January 20, 2026, the Magistrate Judge granted Capital One's Motion for Extension of Time to Answer Plaintiff's Amended Complaint (Dkt. 81). The Magistrate Judge found that good cause exists to extend the deadline by 14 days because additional time is needed to verify its responses to the allegations in the complaint (Dkt. 84). Batts argues that the Magistrate Judge's Order was clearly erroneous and contrary to law and supports his argument by stating that Capital

One did not file an Answer or Rule 12 Motion for eight months following the filing of the Amended Complaint (Dkt. 94 at 1).[2]

As Capital One points out, this is a mischaracterization of the docket (Dkt. 102 at 1–2). Following the screening of the Amended Complaint (Dkt. 32), Capital One filed a Motion to Dismiss the Amended Complaint (Dkt. 39). The Court ruled on the Motion to Dismiss in an Order dated December 30, 2025 (Dkt. 74). Capital One then filed a timely Motion for Extension of Time (Dkt. 81), requesting an additional fourteen days to file its Answer. The Magistrate Judge's decision to grant that Motion was not clearly erroneous or contrary to law.

In the alternative, Batts requests that the Court reconsider the Magistrate Judge's Order under the Court's inherent authority (Dkt. 94 at 3). The Court declines to do so.

### C. <u>Batts' Rule 56(d) Motion</u>

Batts asks the Court to defer its ruling on the Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. 105 at 6). Pursuant to Rule 56, a court is permitted to "delay consideration of a summary judgment motion and order additional discovery before ruling if the nonmovant demonstrates that 'it cannot present facts essential to justify its opposition.'" *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627–28 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(d)). The party seeking relief under Rule 56(d) must offer an affidavit or declaration specifying the additional information that the party expects to discover and explain how that information would assist that party in reaching trial on the legal theory set forth by the other party. *See F.C. Bloxom Co. v. Tom Lange Co. Int'l*, 109 F.4th 925, 936 (7th Cir. 2024). The request in the affidavit or declaration must be "more than a fond hope that more fishing might net some good evidence."

[2] Batts also argues that the Magistrate Judge failed to apply factors from *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) to determine if Capital One proved excusable neglect (Dkt. 94 at 1). *Pioneer* has to do with "a party's failure to comply with a court-ordered filing deadline." 507 U.S. at 387. Since Capital One did not fail to comply with a court-ordered filing deadline, that test is not applicable here.

*Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019). Rule 56(d) does not require the Court to delay ruling on summary judgment if the requested discovery would not make any difference. *See F.C. Bloxom*, 109 F.4th at 936; *Smith*, 933 F.3d at 864–65.

Batts argues that it would be inappropriate to rule on the Defendants' Motions for Summary Judgment because he still needs to conduct essential discovery (Dkt. 105 at 6). As Defendants point out, Batts previously submitted a Rule 56(d) Motion, along with several other motions related to discovery, after the discovery deadline had expired (Dkt. 106 at 3; Dkt. 107 at 10). The Court denied that Rule 56(d) Motion, noting that discovery was closed (Dkt. 103 at 2). Equifax argues that the Court should similarly deny the current Rule 56(d) Motion (Dkt. 107 at 10).

The Seventh Circuit has noted that two of the most common reasons for denying a Rule 56(d) motion are "(1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery." *Smith*, 933 F.3d at 866. Batts does not make any showing of his diligence. To the contrary, as mentioned above, Batts submitted several discovery-related motions after the deadline for the close of discovery. Discovery has been closed for months. It would not be fair to reopen discovery at this point.

In addition, Batts provides no good cause as to why the Court should grant his motion despite his previous Rule 56(d) motion being denied. For example, Batts does not adequately state what he expects to discover that will help his claims reach trial. Rather, he merely states in his response—which does not meet the affidavit requirement—that Capital One possesses a material phone recording, that he was denied deposition of Donald Stephens, and that Equifax refused to produce consumer reports (Dkt. 105 at 6). But as the Court previously stated, the request must be more than a fond hope devoid of any explanation as to why such discovery would assist his claims.

Accordingly, Batts' Rule 56(d) Motion to defer ruling on Defendants' Motions for Summary Judgment is **denied**.

Additionally, Equifax also argues that ancillary motions contained in Batts' Response to the Motions for Summary Judgement are improper because the motions should not be included in his Response (Dkt. 107 at 10). The Court agrees. *See* S.D. Ind. L.R. 7-1(a) ("A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court."). The motion is **denied** on this basis as well.

**D. <u>Batts' Motion to Compel</u>**

Imbedded in Batts' response is a motion to compel discovery (Dkt. 105 at 8). Local Rule 37-1(b) requires a motion to compel to "contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties" and provides that "[t]he court may deny any motion raising a discovery dispute that does not contain such a statement." L.R. S.D. Ind. 37-1(b). Batts' Motion to Compel does not contain such a statement. "District courts have considerable discretion in interpreting and applying their local rules and [the Seventh Circuit] will intrude on that discretion only where [they] are convinced that the district [court] made a mistake." *Frakes v. Peoria School District No. 150*, 872 F.3d 545, 549 (7th Cir. 2017) (cleaned up). Accordingly, Batts' Motion to Compel is **denied** pursuant to Local Rule 37-1(b).

**E. <u>Batts' Motion to Strike</u>**

Imbedded in Batts' response brief is a motion to strike four "specific statements" (Dkt. 105 at 8). The specific statements Batts asks the Court to strike are as follows: (1) "Plaintiff admitted no inaccuracy"; (2) "Plaintiff cannot differentiate damages"; (3) "Plaintiff submitted disputes to Experian and TransUnion"; and (4) "No injury exists". *Id*. However, as Defendants point out, the

Motion to Strike does not make clear which of the Defendants' Motions for Summary Judgment or associated briefs, if any, contain these statements (Dkt. 106 at 4; Dkt. 107 at 12). They argue that Batts also fails to provide sufficient support for striking the statements (Dkt. 106 at 4; Dkt. 107 at 12). The Court agrees with the Defendants and **denies** the request to strike specific statements.

Batts also moves to strike the Declaration of Donald Stephens ("Stephens") (Dkt. 105 at 9). In order to support a motion for summary judgment, a movant may use "[a]n affidavit or declaration . . . to support . . . a motion" if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court finds that the Declaration meets all these requirements.

Batts argues that the Court should disregard Stephens' Declaration because he was not able to depose Stephens (Dkt. 105 at 9). This ignores the language of Rule 56, which allows this Declaration. The fact that Batts did not depose Stephens is irrelevant, especially since Batts provides no support to show that he was not able to depose Stephens. Batts further argues that the Court should strike this Declaration because it contains unsupported assertions and attempts to resolve factual issues. *Id.* Equifax argues that the information in the Declaration is supported by its business records (Dkt. 107 at 12). The Court agrees with Equifax, especially given that many records are included with the Declaration itself (Dkt. 100-1). As Equifax correctly points out, the Declaration is presented for the proper purpose of introducing evidence that could be presented in

an admissible form at trial (Dkt. 107 at 12–13). Accordingly, the improperly filed Motion to Strike Stephens' Declaration is **denied**.

### F. <u>Batts' Evidentiary Objections</u>

Batts raises several different evidentiary objections. He first objects to Defendants describing the loan Batts applied for as a mortgage, rather than a HELOC (Dkt. 105 at 9). Although this is a minor point, to the extent that either Defendant characterizes the loan as a mortgage, the Court will ignore that characterization and recognize that Batts applied for a HELOC.

Batts next objects to misquotation of deposition testimony. *Id.* He does not specify which testimony nor how it is mischaracterized. The Court rejects this vague objection.

Batts disputes Defendants' claim that he suffered no injury. *Id.* This objection is irrelevant based on threshold issues related to the claims, which are further discussed below.

Finally, Batts objects to the assertion that there was a lack of notice. *Id.* Once again, this objection lacks sufficient detail for the Court to determine what specifically he is objecting to, which party made such an assertion, and the reason for his objection.

The objection related to the characterization of the loan as a HELOC is **sustained**, and all other objections are **overruled**.

### G. <u>Capital One's Motion for Summary Judgment</u>

Batts brings a claim under 15 U.S.C. § 1681s-2 against Capital One. This statute provides that, when a furnisher receives a notification of a disputed debt from a credit reporting agency, the furnisher "must 'conduct an investigation with respect to the disputed information'" to comply with the FCRA. *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)). The furnisher has a statutory duty to conduct an investigation of the disputed information and correct or verify the information by sending back the ACDV with appropriate

modifications or verifications. *See* 15 U.S.C. § 1681s-2(b)(1); *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 773 (7th Cir. 2023). There are two threshold requirements for a 15 U.S.C. § 1681s-2(b) claim:

> 1. The plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information.
> 2. The plaintiff must also show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate.

*Frazier*, 72 F.4th at 775. A plaintiff can establish that the information is incomplete or inaccurate through "demonstrating the data furnished was (1) patently incorrect, or (2) materially misleading, including by omission." *Id.* at 772. The information that is subject to this requirement is the information that the furnisher sends back to the credit reporting agency. *Id.* at 776–77. Whether the investigation is reasonable "is a 'factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question.'" *Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 874 (E.D. Wis. 2014) (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir.2005)).

Capital One argues that Batts' claims against it fail because he is unable to prove an essential component of the claim (Dkt. 96 at 11). Specifically, Capital One points out that it responded to each ACDV by verifying that the November 2022 payment on the Account was timely. *Id.* at 12. Batts does not dispute this point. Instead, he counters that a reasonable jury could find that there was a previous error that occurred earlier in November 2022 or that Capital One's investigation was not reasonable (Dkt. 105 at 4). Batts does not cite to or provide any evidence in the record to back up these assertions.

In addition to failing from an evidentiary perspective, Batts misses the mark on timing. Even if he could prove that there was incorrect information previously, to have a successful claim

under 15 U.S.C. § 1681s-2(b), he must prove that there was inaccurate or incomplete information in the information that Capital One sent back to the credit reporting agencies. *See Frazier*, 72 F.4th at 776–77. As Capital One points out, the evidence shows that its ACDVs indicated that there was no late payment for November 2022 on the Account (Dkt. 106 at 6).

Batts has not designated evidence to show inaccurate or incomplete information in Capital One's reports to credit reporting agencies related to his claim. He provides no evidence that there was an inaccuracy or incomplete information and therefore fails to make the prima facie showing required to prevail on a claim under 15 U.S.C. § 1681s-2(b). Capital One has produced documentation showing its responses were accurate and complete. Batts does not provide any evidence to the contrary.

At this stage, Batts may not simply rely on speculation and unsupported allegations. *See Sink*, 900 F. Supp. at 1072; *see also Chiaramonte*, 129 F.3d at 395 ("[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."). Rather, he must produce evidence to create a genuine dispute of material fact, which Batts fails to do.

Based on the designated evidence, a reasonable jury could not find that Capital One provided inaccurate or incomplete information. Accordingly, Capital One's Motion for Summary Judgment is **granted**, and the Court need not address the other issues in Capital One's Motion, including damages.

### H. Equifax's Motion for Summary Judgment

Batts brings claims against Equifax for alleged violations of 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a). "In order to state a claim under either Section 1681e(b) or Section 1681i(a), Plaintiff must allege that: '(1) inaccurate information was included in [his] consumer credit reports;

(2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) [he] suffered injury; and (4) the injury was caused by the inclusion of the inaccurate entry.'" *Hupfauer v. CitiBank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *3 (N.D. Ill. Aug. 19, 2016) (quoting *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 958 (N.D. Ill. 2003)).

Equifax argues that Batts' 15 U.S.C. § 1681e(b) and 15 U.S.C. §§ 1681i(a) claims against it fail because Batts has not presented evidence to show that there was ever an inaccuracy related to an alleged late payment in November 2022 (Dkt. 99 at 18–19, 26). Because all of Batts' claims against Equifax fail if there was never an inaccuracy, the Court analyzes the alleged inaccuracies together. *See Hupfauer*, 2016 WL 4506798, at *3 ("As both Plaintiff's Section 1681e(b) claim and her Section 1681i(a) claim share the same inaccuracy requirement, the Court will consider the alleged inaccuracies in both reports together."); *see also Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("A threshold requirement for claims under both sections is that there must be an inaccuracy in the consumer's credit report.").

Equifax contends that the evidence in the record, including its November and December 2022 frozen scans, shows that there was never any inaccuracy and that Batts has not presented any evidence to the contrary (Dkt. 99 at 19). The evidence that Batts has provided via discovery, including the October Report, December Report, and February Report, confirms Equifax's position, because none of these reports show a late payment for November 2022. *Id.* Furthermore, Equifax highlights that its records show that the October Report, December Report, and February Report were the only reports pulled by First Merchants Bank. *Id* at 20. Equifax argues that these

records show that there was not an additional report in November 2022 which could have contained inaccurate information. *Id.*

Batts argues that there is still a factual dispute as to whether there was a late payment on his credit file during November 2022 (Dkt. 105 at 4). However, he does not cite to or present any evidence in the record to support his assertion.[3] Instead, he reiterates his version of the events surrounding the denial of his HELOC and attacks the evidence provided by Equifax.[4] *Id.* at 3. He claims that a reasonable jury could look at the documentation that Equifax has provided and conclude that there was a late payment temporarily included in the reports, that the late payment was corrected, and the documentation reflects this later correction. *Id* at 3–4.

Batts' claims lack evidentiary support. He does not cite to or present any evidence in the record to prove his claims. Equifax presents multiple reports that show there was never inaccurate information as to a November 2022 late payment, as well as showing there was not a report pulled by First Merchants Bank in November 2022 which could have shown inaccurate information. The only support Batts gives is his repeated narrative of being shown a report with inaccurate information, which at this stage of the litigation is not enough. *See Sink*, 900 F. Supp. at 1072; *see also Chiaramonte*, 129 F.3d at 395 ("[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment."). The undisputed evidence in the record shows that Equifax did not provide inaccurate information. Because Batts did not prove this threshold issue, it is appropriate to rule against him on summary judgment, even though the reasonableness of investigation usually is a question left to the jury. *See Walton v. BMO Harris*

[3] As Equifax points out, Batts' lack of citations to the record violates Local Rule 56-1 (Dkt. 107 at 6).

[4] Batts also states that he still lacks essential evidence (Dkt. 105 at 4). As discussed above, the Court declines to reopen discovery.

*Bank N.A.*, 761 F. App'x 589, 591–92 (7th Cir. 2019) ("Although the reasonableness of a credit reporting agency's procedures under § 1681e(b) is not typically a summary-judgment question, Equifax cannot be liable as a threshold matter if it did not report inaccurate information").

Similarly, because Batts' claims fail on the threshold issue of inaccurate information, the Court need not discuss the other issues in Equifax's Motion for Summary Judgment, including whether claims are time-barred, the reasonableness of Equifax's procedures, and damages. However, the Court notes that, as it stands, Batts would face similar evidentiary issues on many of these points as well. Accordingly, Equifax's Motion for Summary Judgment is **granted**.

**I. Batts' Motion for Jury Trial**

This Order dismisses all claims against Defendants in this case. Accordingly, Batts' Motion for Jury Trial is **denied as moot**.

## IV. CONCLUSION

For the reasons discussed above, the Defendants' Motions for Summary Judgment (Dkt. 95; Dkt. 98) are **GRANTED**. The Court acknowledges Batts' Consolidated Response at Dkt. 105 as a Response to the Motions for Summary Judgment, and the included Rule 56(d) request, Rule 37 Motion to Compel, and Motion to Strike are all **DENIED**. The Objections to Defendants' Evidence in Dkt. 105 are all **OVERRULED**, except for the objection related to the characterization of the loan as a HELOC, which is **SUSTAINED**. The additional filings at Dkts.109, Dkt. 110, Dkt. 111, Dkt. 115, and Dkt. 116 are **STRICKEN** from the record. Batts' Objection at Dkt. 94 is **OVERRULED**. Batts' Motion for Jury Trial (Dkt. 114) is **DENIED** as

moot. Batts' claims are **dismissed with prejudice**, and final judgment will issue under separate order.

**IT IS SO ORDERED.**

Date: September 28, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

RODNEY ANTONIO BATTS
2610 E. 40th St.
Indianapolis, IN 46205

Jennifer R. Brooks
Seyfarth Shaw LLP
jrbrooks@seyfarth.com

Neil Peluchette
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
npeluchette@taftlaw.com

Jeffrey D. Pilgrim
Pilgrim Christakis LLP
jpilgrim@pilgrimchristakis.com

Nicholas Vera
Pilgrim Christakis LLP
nvera@pilgrimchristakis.com